IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No.   19-322 |
| GALEN GRAY | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Heidi M. Grogan, Assistant United States Attorney for said District, and respectfully files the following Memorandum in Aid of Sentencing.

Upon consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), the government urges the Court to sentence defendant Gray to a term of imprisonment at the high end of the guideline range given: (i) defendant's sexual interest in young children as demonstrated by his significant and graphic search for and collection of child sexual abuse material (child pornography) and his own words and actions; (ii) the defendant's disregard for this Court's bond conditions; and (iii) the defendant's continued criminal conduct and exploitation of minors.

The Court is required to give "meaningful consideration" to all of the relevant Section 3553(a) factors.  *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).  However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors into account in imposing sentence.  *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper, supra*, 437 F.3d 329.

I.  **FACTUAL AND PROCEDURAL CONTEXT**

Galen Gray, the defendant, has pleaded guilty to a one-count federal Information that charged him with Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2). As alleged in the Information, the images possessed by the defendant "depict prepubescent minors and minors who have not attained 12 years of age, engaging in sexually explicit conduct." Given the young age of the minors depicted, the maximum term of imprisonment for the defendant is increased from 10 years to 20 years of imprisonment. 18 U.S.C. § 2252(b)(2).

In his plea agreement, which was detailed on the record at the change of plea hearing on November 20, 2019, Mr. Gray admitted to offense conduct that established the following fact-based sentencing enhancements, as detailed in the Presentence Investigation Report ("PSIR"):

a. the addition of two levels to the base offense level pursuant to § 2G2.2(b)(2) because the images involved prepubescent minors;

b. the addition of two levels to the base offense level under § 2G2.2 (b)(3)(F) because the defendant knowingly engaged in the distribution of material depicting the sexual exploitation of minors;

c. the addition of four levels to the base offense level under § 2G2.2(b)(4) because the material depicts of sadistic or masochistic conduct or the sexual abuse or exploitation of an infant or toddler was involved;

d. the addition of two levels to the base offense level under § 2G2.2(b)(6) because a computer was used to commit the offense; and

e. the addition of five levels to the base offense level under § 2G2.2(b)(7)(D) because

the defendant possessed at least 600 images of minors engaging in sexually explicit conduct.

Law enforcement became aware of Mr. Gray's criminal conduct when he lost his cellular telephone at a local Walmart store and another individual mistakenly claimed it. After this individual claimed the phone and took it home to charge it, once the phone was fully charged, the individual observed several pictures of very young naked females on the phone and immediately contacted the North Fayette Township Police Department. Thereafter, Mr. Gray, the actual owner of the phone, returned to Walmart to claim the phone as his and Walmart contacted the police. When law enforcement went to Mr. Gray's home to speak with him about the images discovered on the phone, Mr. Gray confirmed ownership of the phone and responded: "I should have had a password on that phone." Mr. Gray also told law enforcement that he downloaded a large amount of photos to his phone using a link called "Chat Z" and observed that "some" of these pictures were of "kids." Mr. Gray stated he was trying to delete the photos that were downloaded; however, there were a lot of them. Mr. Gray admitted to receiving and sending child pornography using his Kik account.

During the forensic review of Mr. Gray's cell phone, approximately 817 images of apparent child sexual abuse material (child pornography) and 28 videos of child sexual abuse material were located, the majority of which depict prepubescent children. These images were found in several locations on the device, including in various user-created folders with names indicative of the contraband material contained within. The forensic reviewer found the child sexual abuse material in user created files with names that included: "Young bdsm," and "Trading." Child sexual abuse images and videos were also located as part of Kik messages and as thumbnails of

3

images which had been stored in Dropbox (online file sharing) accounts. Mr. Gray's collection of child sexual abuse material is particularly graphic and includes visual depictions of babies being sexually assaulted, the penetration of toddlers by adults, and underage females in bondage. All of these files were obtained prior to March 21, 2014 (when Mr. Gray lost his phone).

    a. <u>Sado-Masochistic Depictions of Violence and Access to Undetermined Content</u>

The forensic review of Mr. Gray's device clearly shows an interest in sado-maschostic material and material involving minors. A review of the user dictionary from the device revealed words such as the following: "Bdsm," (term commonly understood to refer to bondage, sadism, and masochism), "Illegal," "13-year-old," and "12y." Web search history included searches for *inter alia* "Young bondage," and "Lolita nude." The device's web history also revealed visits to a Dropbox account which contained files with names indicative of child pornography as well as visits to websites, also indicative of child pornography, that host private chat rooms.

A forensic review was also conducted on Mr. Gray's laptop computer; no images of real children engaged in sexually explicit conduct were found on this device; however, two anime images were located which depicted child bondage.

    b. <u>Defendant's Graphic Sexual Pedophilic Chats</u>

The forensic review of Mr. Gray's phone also made clear that Mr. Gray sought out and received images of child sexual abuse material from other like-minded individuals. Two Skype chat sessions were located wherein it is clear that Mr. Gray, using the name "lordzolmos" sent video files containing child pornography (the videos were deleted; however, thumbnail images showed that the videos contained apparent child pornography). The forensic review also located ten Kik chat sessions for user "lzmclovin66" wherein child pornography image and video files

4

were traded or discussed. These recovered Kik chats occurred in February and March 2014 and will be made available to the Court through the testimony of Office of Attorney General Special Agent Aprill-Noelle Campbell at the time of the Sentencing Hearing. In the majority of the chats, "lzmclovin66" asked for images of bondage and, in several of the chats, stated his age preference for images was children. Some of the images and videos in the chats had been deleted; however, a few of the files (images of females, of a variety of ages, including minors) were located on the device. When questioned by law enforcement upon attempting to recover his phone, Mr. Gray had informed that he had used Kik to both send and receive child pornography.

In the recovered chats, Mr. Gray's sexual interest in minors, including an interest in minors participating in bondage, is apparent. For example, in one Kik chat dated March 10, 2014, lzmclovin66 asked: "Got full boddy? Whats your youngist?" and then after receiving an image of child pornography asked: "Got them tied up?" In another chat from March 8, 2014, Mr. Gray's online predatory behavior is apparent: Mr. Gray as lzmclovin66, sends another individual a video and the individual asks him: "How do you find girls like that willing to do that" and Mr. Gray responded: "I just looked . . . It took me a long time but I.keep [sic] looking for new girls to mold." The other Kik individual stated: "Explain what do you look for in the girls like in the beginning," and Mr. Gray replied: "Well looks are not a big thing. I look to see if thay [sic] are open mined. [sic] Then I get to know thim [sic] trying small things."

  c. Defendant's statements

Mr. Gray affirmed his conduct in an interview with law enforcement. As noted above, when law enforcement approached Mr. Gray and informed him of the child sexual abuse images found on his phone, Mr. Gray did not deny the images; rather, he stated his regret that he had not

5

password-protected his phone. During this interview, Mr. Gray informed that he was attracted to females between the ages of 16-18 due to them being less developed and admitted to receiving and sending child pornography using his Kik account.

Of the images submitted for child identification through the National Center for Missing and Exploited Children, 116 of the files submitted were identified with 56 series of images identified. The children whose sexual exploitation is documented in the files span multiple states in the United States, as well as multiple countries.

## II.   CONSIDERATION OF THE 3553(a) FACTORS

### a.   The Nature and Circumstances of the Offense (§ 3553(a)(1))

It is beyond dispute that the sexual exploitation of minors is a very serious crime. As reflected in the Presentence Investigation Report ("PSIR"), the defendant's total offense level is 30. PSIR at ¶ 38. With a Criminal History category of I, the resulting guideline imprisonment range is 97 – 121 months' imprisonment. *Id.* at ¶ 83.

Congress has explicitly recognized that child pornography offenses are "crimes of violence." See 18 U.S.C. § 3156. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS–FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

Using children to produce graphic, sexual images is a form of sexual abuse which can cause mental and physical harm to a child. *United States v. Champion*, 248 F.2d 502, 506 (6th Cir. 2001). "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). The consumer of child pornography

contributes to the harm to victims who are the subject of child pornography: (1) the abuse is perpetuated through instantaneous and world-wide dissemination, (2) the existence of the image is a permanent violation of the child's privacy, and (3) the demand for the creation of more images is fueled by the consumer. *Norris*, 159 F.3d at 929-30. Consumers of child pornography, whether or not they are involved in production, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images. *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also*, *United States v. Ferber*, 458 U.S. 747, 759 (1982).

      Mr. Gray's collection of child sexual abuse material was extensive and graphic, demonstrating his intent and sexual interest in children. Mr. Gray's child pornography collection was not incidental – it was intentional and deliberate. *See United States v. Blinkinsop*, 606 F.3d 1110, 1117 (9th Cir. 2010) (fact that defendant obtained hundreds of images showing prepubescent children engaged in sadistic and masochistic sexual acts by using specific search terms contradict his contention that he was merely a "passive collector of [child] pornography" and "a marginal player in the overall child pornography business").

      Mr. Gray's method of obtaining his child pornography indicates his sexual interest in children. His search terms and chats indicate that he was looking for a particular kind of child pornography, often bondage. This underscores the seriousness of Mr. Gray's conduct—his actions were intentional. Mr. Gray had a genuine interest in the content of the images, demonstrating his sexual interest in children. Mr. Gray was in fact seeking out prepubescent children or sadistic or masochistic content.

Moreover, Mr. Gray was engaging with other similarly-minded people to obtain and trade child pornography. The government submits that when defendants like Mr. Gray communicate with like-minded individuals about child sexual abuse, they go through a process of normalization and bonding. Here, the like-minded individuals that Mr. Gray engaged with also sought out bondage and younger children engaged in sexual abuse.

Mr. Gray's post-arrest admissions corroborate the forensic evidence in this case and indicate that Mr. Gray knew it was wrong to collect and share child pornography ("I should have had a password on that phone."). By his own words in online chats (Kik), Mr. Gray proclaimed his sexual interest in children, demonstrating that his sexual interest in children is not fleeting or incidental.

Additionally, the fact that Mr. Gray was using a variety of methods to collect child sexual abuse material (Kik, Dropbox, websites such as "Chatzy", etc.) shows that Mr. Gray was highly motivated and committed to amassing a collection of child sexual abuse material. He may also have been sampling different approaches, perhaps in an effort to determine which technology would garner him the most material and social interaction with the least risk of getting caught.

b. **History and Characteristics of the Defendant (§ 3553(a)(1))**

Mr. Gray's apparent close family relationships, employment history, and cooperation with law enforcement weigh in his favor. Still, unlike the majority of defendants who are charged with child pornography offenses, Mr. Gray has prior criminal contacts and convictions which are detailed within the PSIR.

While Mr. Gray has acknowledged his offense and pleaded guilty, it is far from clear that he appreciates the seriousness of his offense. Although the expert reports submitted by defense

8

counsel to date do not excuse Gray's conduct, they do not factor into their recommendations the other factors that must be considered by the Court at sentencing and detailed herein.

While the government agrees that Mr. Gray is need of mental health treatment, there is simply no connection between his psychological disorders and his conduct involving child pornography which excuses the conduct in any way. Mr. Gray's diagnoses indicate that his life has been marked by difficulty with social interactions and may cause him difficulty in navigating complex situations; however, his mental conditions are not responsible for his deviant sexual interest in minors, as demonstrated by his collection of contraband and his online communications. Mr. Gray's autism and anxiety did not prevent Mr. Gray from knowing that it was wrong possess, collect, and trade sexual abuse images of children. We know this from Mr. Gray's statement to police upon being approached about the material found on his phone. This Court should not vary downward.

Moreover, as this Court is already aware, Mr. Gray has not complied with all Court-ordered conditions of pretrial release. The circumstances of Mr. Gray's noncompliance is detailed at paragraphs 7 through 10 of the PSIR. In sum, Mr. Gray received and used a computer despite a prohibition on nonapproved or monitored electronic devices. Mr. Gray also had Xbox gaming consoles at his residence, in violation of his bond conditions, as well as a sword and four shurikens (hand throwing blades). After several hearings, this Court denied the government's request for remand while awaiting sentencing, and continued Mr. Gray's bond conditions with amendments, including a prohibition on Mr. Gray's possession or use of any electronic device with internet access. Despite this, Mr. Gray continued to both access the internet and seek out child sexual abuse material.

At the sentencing hearing, the government will call several law enforcement witnesses and present testimony and evidence showing Mr. Gray continued to access the internet and child sexual abuse material despite his pending sentencing hearing and in violation of his bond conditions. The government will present testimony showing that the National Center for Missing and Exploited Children received two CyberTip reports that the FBI traced back to accounts associated with Mr. Gray. The first CyberTip involved an upload of a known video of child sexual abuse material (the "Jenny" series) to Dropbox on August 17, 2020 by a person associated with the email address lzmclovin42@gmail.com. In the pending case, forensic review of Mr. Gray's phone showed that "lzmclovin" is a name used by Mr. Gray (lzmclovin@gmail.com (Facebook) and lzmclovin66 (Kik)). A search warrant for the lzmclovin42@gmail.com address confirmed that the it has a recovery email of galengray1@gmail.com and a birthdate matching Mr. Gray's. The second CyberTip involved a report by the social media application (Kik) that an individual using the screen/username "masterzolmis" and email account lordzolmis@gmail.com had uploaded three videos of suspected child pornography in November 2020. Law enforcement's investigation revealed that the IP addresses for the uploads resolved to the McKees Rocks residence where Mr. Gray is residing pending sentencing.

Mr. Gray's blatant disregard for the Court's pretrial supervision and the evidence that the government will put forth at the upcoming hearing establishing that, at the very least, Mr. Gray continues to access the internet (but also that he is accessing or attempting to access child sexual abuse material), weighs in favor of a sentence at the high end of defendant's guideline range.

    **c. Seriousness of the Offense, Respect for the Law, Just Punishment (§ 3553(a)(2)(A))**

The law is clear that child pornography crimes warrant stringent sentences. The Court of Appeals for the Third Circuit has expressed disapproval of extremely lenient, below guideline range sentences in these cases. In *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007), the district court sentenced a child pornography defendant to four months of imprisonment, even though the applicable guideline range was 37 to 46 months. The Third Circuit vacated the sentence and remanded for sentencing, holding that such a lenient sentence was unreasonable. *Id.* at 262. The court reasoned that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of 3553 factors. Goff downplayed the seriousness of the offense by implying that it was a victimless crime, which was a solitary, private activity driven by his curiosity of the subject. The Third Circuit rejected these claims as follows:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as no one else in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing casual or theoretical about the scars they will bear from being abused for Goff's advantage. Far from persuading us that Goff's crime was relatively minor, his efforts to downplay the harm his actions have inflicted on others serve chiefly to highlight the concern the District Court should have had with Goff's failure to appreciate the seriousness of the offense.

*Id.* at 258-59. Goff also argued that he was entitled to a downward departure/variance because he never acted out in any sexual way with children. *Id.* at 259. The Third Circuit dispatched this assertion:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

11

*Id.* The Court criticized the district court's reliance upon Goff's lack of criminal history because many child pornography defendants are first time offenders. *Id.* at 260-61 (citing *United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir.2006) (the district court erred when it deemed an offense "atypical simply because the defendant had not committed other crimes.")).

More recently, the Sixth Circuit underscored the seriousness of child pornography offenses. *United States v. Schrank*, 2020 WL 5511980, at *1-2 (6th Cir. Sept. 14, 2020).

The government urges this Court to similarly fashion a sentence that recognizes the seriousness of Mr. Gray's offense while providing for just punishment. A sentence at the high-end of the guideline range accomplishes this goal.

### d. Deterrence (§ 3553(a)(2)(B))

Deterring the sexual exploitation of minors must be given significant weight at sentencing—children are the most defenseless members of our society and exploiting a child's innocence by possessing child pornography is an egregious crime. Practically speaking, severe criminal penalties for those who commit crimes exploiting children is critical to drying up the market and decreasing demand for material that exploits children. *See Goff*, 501 F.3d at 261 & (reversing the district court and stating: "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it, and so the more it will be produced. . . . deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing . . . ."). Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only

practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"). Thus, this factor includes the deterrence of the defendant in the instant case, as well as those who many consider similar offenses in the future.

Moreover, as the *Schrank* court pointed out: "[c]hild pornography offenses happen in the shadows, making it difficult to apprehend perpetrators . . . . It is thus especially important that courts impose sentences sufficient to deter this clandestine criminal conduct." 2020 WL 5511980, at *2.

   e.  **Protect the Public (§ 3553(a)(2)(C))**

Recent research focused on federal offenders published in the Journal of Sexual Aggression underscores the grave risk that crimes like possession and distribution of child pornography pose to children. The lack of physical contact in these offenses has fostered a frequent, erroneous assumption that "these offenders are somehow distinct from child molesters (i.e., 'hands-on' abusers)" and therefore not deserving of guideline sentences. M.L. Bourke, et. al., *The Use of Tactical Polygraph with Sex Offenders*, J. of Sexual Aggression 1, 5 (2014). (The authors are of this article were exclusively federal researchers or investigators, from the U.S. Marshals Service, FBI, U.S. Postal Inspection Service, U.S. Secret Service and U.S. Attorney's Office).

Significantly, in a sample of 127 suspects with no known history of hands-on offending, only 4.7% admitted sexually offending against at least one child victim. During polygraph, an

13

additional 52.8% of the men tested disclosed hands-on sexual abuse. *Id.* at 17. The researchers drew the following conclusions from their work: 1) researchers, treatment providers and legal officials should avoid placing offenders into groups labeled as "hands-off" based on the absence of such crimes in their criminal histories; 2) the study affirmed extant research that child pornography offenders are sexually attracted to children, and that a large percentage of these individuals have victimized at least one child via an act of hands-on sexual abuse; 3) "significant crossover" exists between contact and non-contact child exploitation because of the shared motivational pathway – sexual interest in children. *Id.* at 11, 20-21.

Mr. Gray's criminal conduct in this case demonstrates explicit sexual interest in prepubescent children, making him a danger to children. While recidivism can be difficult to assess, in a study published by Michael C. Seto, James Cantor, and Ray Blanchard, the researchers concluded that "as a group, child pornography offenders showed <u>greater</u> sexual arousal to children than to adults and differed from groups of sex offenders against children, sex offenders against adults, and general sexology patients. The results suggest child pornography offending is a stronger diagnostic indicator of pedophilia than is sexually offending against child victims." Seto, Cantor and Blanchard, "Child Pornography Offenses are a Valid Indicator of Pedophilia," *Journal of Abnormal Psychology*, Volume 115 (2006).

Moreover, Mr. Gray's continued conduct while on bond demonstrates his pedophilia and continued danger to the community. A guideline sentence will reenforce to Mr. Gray, and to others who are tempted to follow in his footsteps, that this crime is exceedingly grave in nature, thereby promoting respect for the law, providing just punishment, and deterring criminal conduct. Additionally, the public would be protected from further crimes of the defendant. A sentence at

the high end of the guidelines is sufficient, but not greater than necessary, to accomplish these goals.

### f. Need to Avoid Sentencing Disparity (§ 3553(a)(6))

Mr. Gray has committed serious child pornography crimes in a manner that triggered several fact-based enhancements. "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose . . .the more disparity there will be." *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008). Moreover, Mr. Gray's conduct while awaiting sentencing sets his case apart from other cases where the court might otherwise be inclined to vary from the Guidelines. It is the government's position that a sentence within the advisory guideline range here is appropriate, not unreasonable, and minimizes disparities, and is appropriate in light of the factors set forth in Section 3553(a).

### III. RESTITUTION

Pursuant to 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory. A defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

- (a) medical services relating to physical, psychiatric, or psychological care;
- (b) physical and occupational therapy or rehabilitation;
- (c) necessary transportation, temporary housing, and child care expenses;
- (d) lost income;
- (e) attorneys' fees, as well as other costs incurred; and
- (f) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1) and (3). A court may not decline to issue a restitution order because of

"the economic circumstances of the defendant" or "the fact that a victim has received, or is entitled to receive, compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4)(B).

As noted in the PSIR, "Jenny" and "Tara" have requested restitution. Undersigned counsel for the government has conferred with defense counsel, who is still in the process of contacting the attorneys representing these victims. Therefore, the government will update the Court on the status of restitution once defense counsel has had an ability to complete negotiations.

### IV. CONCLUSION

For all of the foregoing reasons, the government submits that this Court should conclude that a sentence the high end of the guideline range is warranted, provides just punishment, and is not greater than necessary to address Mr. Gray's crimes and the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN R. KAUFMAN
Acting United States Attorney

*s/ Heidi M. Grogan*
HEIDI M. GROGAN
Assistant United States Attorney
PA ID No. 203184